**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 08-cv-01186-REB-CBS

MARY ROBINSON

      Plaintiff,

vs.

DEAN FOODS COMPANY,
a Delaware Corporation;
DEAN WEST, LLC,
a Delaware limited liability corporation,
SOUTHERN FOODS GROUP, LLC,
a Delaware limited liability company doing business as
MEADOW GOLD DAIRY.

      Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

      This matter is before me on the **Defendants' Motion for Summary Judgment** [#80][1] filed April 30, 2009.  The plaintiff filed a response [#84], and the defendants filed a reply [#87].  I grant the motion.[2]

---

[1] "[#80]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order and other orders entered in this case.

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

# I.  JURISDICTION

I have jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

# II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue.  **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995).  Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper.  **Concrete Works**, 36 F.3d at 1518.  All the evidence must be viewed in the light most favorable to the party opposing the motion.  **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).  However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary

judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999); *Nutting v. RAM Southwest, Inc.*, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

## III.  FACTS

The plaintiff, Mary Robinson, first was employed by Meadow Gold Dairy on May 1, 1985. *Response to motion for summary judgment* [#84], Exhibit 3 (Robinson Declaration), ¶ 2. Meadow Gold is the "d/b/a" of one of the defendants. I will refer to the defendants collectively as Meadow Gold. Robinson's employment was terminated on May 15, 2006.[3] *Id.*, ¶ 19. In her complaint, Robinson alleges that the defendants discriminated against her based on her race, and retaliated against her because she opposed what she perceived to be the defendants' unlawful discriminatory practices.

In 2006, Robinson held a position known as a machine operator or a filler operator in the Fluid Milk Department. She worked in a room known as the Wendy's Room, where Wendy's Frosty mix and milk is packaged. Meadow Gold says Robinson was a Class A employee, while Robinson says she was a Class AA employee. *Motion for summary judgment* [#80], Exhibit E (Stephen Deposition), 59:18 -21; Robinson Declaration, ¶¶ 6, 26. At the opposite end of the machine line where Robinson worked, a Class B employee operated the machine. In March 2006, that Class B employee was Sherman Grays. *Motion for summary judgment* [#80], Exhibit A (Robinson Deposition), 148:23-149:3.

On March 30, 2006, Grays complained to management about Robinson.

---

[3]  Robinson later filed a union grievance concerning her termination. Ultimately, Robinson and the defendants settled the grievance, and Robinson executed a settlement agreement. In that agreement, Robinson stated that she resigned voluntarily from her employment by defendants. For the purposes of the motion for summary judgment, however, the parties do not dispute that Robinson's employment was terminated.

Specifically, Grays complained that Robinson expected Grays to perform certain job functions that were properly the responsibility of the individual in Robinson's position. Meadow Gold management then examined precisely which duties Robinson should perform.  Various aspects of this evaluation were conducted by Janet Stephen, Meadow Gold's Human Resources Manager, Ralph Lee, the Plant Manager, and Roy Pope, Robinson's direct supervisor.

Robinson says she told Stephen and Lee on March 30, 2006 that her job had been modified permanently and that the duties in question had been removed from her job because of Robinson's medical restrictions. *Robinson Declaration*, ¶ 9.  On April 4, 2006, Robinson provided Meadow Gold with documentation that Robinson claims verifies her "permanent modified restrictions." *Id.*, ¶ 11; *Motion for summary judgment*, Exhibit G, entry for April 4, 2006.  Stephen says she pulled Robinson's injury files on March 29,. 2006, and was not able to find any documentation of permanent restrictions. *Motion for summary judgment*, Exhibit O.[4]   Rather, Stephen concluded that Robinson had been released to full duty in July of 2003.  *Id.*  Robinson cites defendants' exhibit P, bates numbered page 000115, as evidence demonstrating that she had "permanent modified restrictions."  *Robinson Declaration*, ¶ 11; *Motion for summary judgment*, Exhibit P, Bates page 00015.  This document, dated December 29, 2000, states that Robinson had "permanent modified restrictions" as of May 6, 1998.  *Motion for summary judgment*, Exhibit P, Bates page 00015.  However, medical records provided to Meadow

---

[4]   Robinson argues the Exhibit O contains inadmissible hearsay.  Exhibit O contains notes prepared by Stephen describing events related to the dispute about Robinson's precise duties. *Stephen Deposition*, 126:7-12.  In many instances, the statements in this document qualify as Stephen's recorded recollection under Fed. R. Evid. 803(5).  To the extent this document includes statements made by Robinson to or in the presence of Stephen, such statements are nonhearsay and are admissible as admissions by a party-opponent under Fed. R. Evid. 801(d)(2).

Gold by Robinson indicate that her treating doctors said she "may return back to work, full duty," as of June 25, 2003, and that she was "(a)ble to return to full duty" on November 12, 2003.  *Motion for summary judgment*, Exhibit P, Bates pages 00016 - 00017.

On April 6, 2006, Robinson met with Stephen, Lee, and Sherman Grays, Robinson's co-employee, to discuss Robinson's duties.  Ultimately, Lee concluded that there were five job duties that Robinson was not performing.  Robinson was told at this meeting that she was required to learn and to start performing the five duties that she had not been performing.  *Motion for summary judgment*, Exhibit G, entry for April 6, 2006; Exhibit L, p. 1.[5]  Robinson was given until May 8, 2006, to do so.  *Id.*  Robinson responded with a list of reasons she should not have to perform the additional duties. Her reasons included: (1) prior management had told her she did not have to perform some of the duties; (2) that she could "not tighten them down," referring to a task known as sizing the machine; (3) sizing the machine is the job of the maintenance department; and (4) she is not supposed to do repetitive work.  *Motion for summary judgment*, Exhibit G, p. 2.  Robinson was told that she must learn the five new tasks by May 8, 2006.  *Id.*, Exhibit L.

---

[5]  Robinson objects to the use of Exhibit G as evidence in support of the defendants' motion for summary judgment, arguing that much of the information in Exhibit G is inadmissible hearsay.  I conclude, however, that the entry for April 6, 2006, does not include inadmissible hearsay.  In her deposition, Stephen testified that she prepared this document so she could maintain a time line of relevant events. *Stephen Deposition*, 113:11 - 114:18. In many instances, the statements in this document qualify as Stephen's recorded recollection under Fed. R. Evid. 803(5).  To the extent this document includes statements made to Robinson, by or in the presence of Stephen, about the particular additional duties Robinson was asked to perform, such statements are not offered for the truth of the matter asserted in these statements and are not hearsay. Rather, such statements demonstrate that Robinson was on notice of the additional duties she was asked to perform. To the extent this document includes statements made by Robinson to or in the presence of Stephen, such statements are nonhearsay and are admissible as admissions by a party-opponent under Fed. R. Evid. 801(d)(2).  The same analysis is applicable to other parts of Exhibit G discussed in this order.

Roy Pope was Robinson's direct supervisor.  Pope met with Robinson on April 13, 2006, to check on her progress.  Robinson told Pope on that day that she had not tried to learn or perform the tasks in question and that she was not going to do so. *Motion for summary judgment*, Exhibit L.  Robinson was reminded that she needed to learn the new tasks or face disciplinary action.  *Id*.  On May 1, 2006, Pope and Stephen again met with Robinson to discuss her progress.  *Motion for summary judgment*, Exhibit G, Exhibit L.  Robinson sat sideways in her chair refusing to look at Pope and Stephen.  *Id.*, Exhibit G.  Before leaving the meeting, Robinson said "I was told by the union that you guys do what you have to do."  *Id.*

On May 9, 2006, Pope, Stephen, and Lee met with Robinson and a union representative.  *Motion for summary judgment*, Exhibit G.  At this meeting, Robinson stated a variety of reasons she had not performed the new tasks in question.  *Id*.  She said she would not train with an employee named Sherman, and that an employee named Robert is "never around to train with."  *Id*.  She said also that she knew it all and there is nothing for her to train on.  *Id*.  In addition, Robinson said that certain tasks were the job of other employees. *Id*.  Finally, Robinson said she would not go to the doctor to get medical restrictions because she feared she would be treated badly as a result.  *Id*.  Robinson was suspended at the end of this meeting.

On May 15, 2006, Pope, Stephen, and Lee met with Robinson and a union representative.  *Motion for summary judgment*, Exhibit G.  Robinson again listed various reasons she could not do the tasks at issue.  *Id*.  The people involved in this meeting referred to one of the tasks as the CIP requirement.  *Id.*  This requirement was eliminated from the list of tasks at issue because Robinson "did not have ample opportunity to learn this."  *Id*.  Lee asked Robinson if anything would change if she was

reinstated in her job. *Id.* Robinson said she would try, but also provided numerous reasons why she couldn't or wouldn't try. *Id.* Robinson's employment was terminated at the end of this meeting due to her failure to perform her duties and insubordination. *Id.* Robinson was given a termination letter outlining the basis for her termination. *Motion for summary judgment*, Exhibit L.

In her response to the motion for summary judgment, Robinson does not dispute most of the facts cited by Meadow Gold in its motion for summary judgment. Robinson does assert that she was a Class AA employee rather than a Class A employee, as asserted by Meadow Gold. In addition, Robinson cites various facts in support of her contention that Meadow Gold's stated reason for terminating Robinson, failure to perform her duties and insubordination, were pretexts for discrimination and for retaliation. Those facts are discussed below.

The motion for summary judgment addresses Robinson's first and second claims for relief, as alleged in her Second Amended Complaint [#86], filed May 29, 2009.[6] In a separate motion, the defendants seek dismissal of Robinson's third and fourth claims for relief. I address the motion to dismiss in a separate order, issued concurrently with this order.

## IV.  RACE DISCRIMINATION - § 1981

In her first claim for relief, Robinson alleges that Meadow Gold discriminated against her in her employment based on her race, in violation of 42 U. S. C. § 1981. "'In racial discrimination suits, the elements of a plaintiff's case are the same whether that

---

[6] I note that the Second Amended Complaint [#86] was filed after the motion for summary judgment [#80] was filed. However, the first and second claims for relief in the Amended Complaint [#18] and the Second Amended Complaint [#86] are identical. These are the two claims addressed in the motion for summary judgment.

case is brought under §§ 1981 or 1983 or Title VII.'"  **Carney v. City and County of**

**Denver**, 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting **Baca v. Sklar**, 398 F.3d 1210,

1218 n. 3 (10th Cir. 2005)).  Robinson has not presented any direct evidence that race

discrimination played any role in the termination of her employment.  Absent direct

evidence of race discrimination, the familiar burden-shifting analysis of **McDonnell**

**Douglas Corp. v. Green** is applicable to Robinson's claim that she was terminated

based on her race.  411 U.S. 792, 802-04 (1973).  Applying this burden shifting

analysis, if a plaintiff satisfies the burden of establishing a *prima facie* case of

discrimination, then the burden shifts to the defendant to articulate a legitimate,

nondiscriminatory reason for the challenged employment decision.  If the defendant

meets this burden, then the plaintiff must prove the ultimate fact of discrimination by

showing that defendant's proffered reason is pretextual.  **See Young v. Dillon**

**Companies, Inc**., 468 F.3d 1243, 1249 (10th Cir. 2006) (Title VII); **McKnight v.**

**Kimberly Clark Corp.**, 149 F.3d 1125, 1128 (10th Cir. 1998) (ADEA).

A.  *Prima Facie* Case

To establish a *prima facie* case of employment discrimination when the plaintiff's

employment was terminated and the plaintiff claims she was terminated based on her

race, the plaintiff must show that: (1) she is a member of a protected class; (2) she was

qualified and satisfactorily performing her job; and (3) she was terminated under

circumstances giving rise to an inference of discrimination.  **Salguero v. City Of Clovis**,

366 F.3d 1168, 1175 (10th Cir. 2004).  Some authorities include an additional element,

requiring a plaintiff to show that he or she was treated less favorably than other similarly

situated employees.  **See, e.g.,Argo v. Blue Cross and Blue Shield of Kansas, Inc**.,

452 F.3d 1193, 1201 (10th Cir. 2006).  For the purpose of an employment discrimination claim based on termination of the plaintiff's employment, and when the employer cites unsatisfactory performance or misconduct as the basis for the termination, a showing of disparate treatment is not necessary to establish a *prima facie* case.  ***See Sorbo v. United Parcel Service***, 432 F.3d 1169, 1173 (10th Cir. 2005).  The broader requirement of showing circumstances giving rise to an inference of discrimination "may be (and often is) satisfied by proof that the employer treated similarly situated employees more favorably," but such proof is just one means via which such circumstances can be proven.  ***Id***.

In this case, it is undisputed that the plaintiff is a member of a protected class because she is African-American.  In their briefs, the parties dispute whether Robinson was qualified, whether she was performing her job satisfactorily, and whether she was terminated under circumstances giving rise to an inference of discrimination.  For the reasons outlined below, I conclude that Robinson has not come forward with evidence that would permit a reasonable fact finder to conclude that Robinson was terminated under circumstances giving rise to an inference of discrimination.  Absent such evidence, Robinson has not established a prima facie case of race discrimination and the defendants are entitled to judgment as a matter of law.

Addressing the requirement that she demonstrate circumstances giving rise to an inference of discrimination, Robinson cites several bases on which she claims that the evidence shows that the defendants' stated reasons for modifying her job and terminating her employment were pretexts for discrimination.  *Response*, pp. 9 - 18.  As Robinson notes, this evidence also is relevant to demonstrating that the defendants' proffered reasons for terminating Robinson's employment were pretexts for

discrimination.  However, such evidence also may be used to show circumstances giving rise to an inference of discrimination.  *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1317 n. 7 (10th Cir. 2006); *Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003).  "The real question, it must be remembered, is whether a plaintiff has shown actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act."  *Hysten v. Burlington Northern and Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002) (internal quotation and citation omitted).  I review each of Robinson's contentions below.

1.  Meadow Gold knew Robinson's physical limitations were supported by her medical records.  Robinson relies on the statement in a letter from Rocky Mountain Medical Group, dated December 19, 2000, that Robinson has "permanent modified restrictions."  *Motion for summary judgment*, Exhibit P, Bates page 115.  It is undisputed that Meadow Gold had this information.  Robinson claims that despite this medical record, Lee required Robinson to perform the five additional tasks, tasks that were inconsistent with Robinson's permanent modified restrictions.  These circumstances, Robinson argues, support an inference of race discrimination.  As Meadow Gold notes, however, it is undisputed that the most recent medical records known to Meadow Gold state that Robinson's treating doctors had said she "may return back to work, full duty," as of June 25, 2003, and that she was "(a)ble to return to full duty" on November 12, 2003.  *Motion for summary judgment*, Exhibit P, Bates pages 00016 - 00017.  In this context, the fact that Meadow Gold required Robinson to undertake the five new duties does not support an inference of race discrimination.  The new duties were consistent with the most recent medical records known to Meadow Gold.

2.  Robinson was a Class AA employee and not a Class A employee.  Robinson notes that some time around the year 2000, Meadow Gold installed a new automated filler machine and boxer machine.  Robinson says she operated that machine, subject to her medical restrictions, until she was terminated.  *Robinson Declaration*, ¶ 6. Robinson says she was a Class AA employee when she held this position, as opposed to a Class A employee, and that she was a Class AA employee when her employment was terminated.  *Response*, Exhibits 8, 9.  Robinson says the five additional duties never were part of her duties as a Class AA employee.  *Robinson Declaration*, ¶ 28. Robinson's Exhibit 9 is a bid sheet for Robinson's position that was issued after Robinson's termination.  *Response*, Exhibit 9.  The bid sheet designates the position as Class AA.  *Id.*  The duties specified on Exhibit 9 neither include nor exclude the five additional duties that Robinson was asked to perform.  *Id.*  Notably, the bid sheet includes the duties of filling "production orders in an expedient and accurate manner" and performing "other duties as needed or assigned."  *Id.*  These specific descriptions generally are consistent with the five additional duties Robinson was asked to perform.

Viewing the facts in the record in the light most favorable to Robinson, no reasonable fact finder could conclude that Meadow Gold's requirement that Robinson perform the five additional duties was inconsistent with Robinson's claimed status as a Class AA employee.  In these circumstances, and assuming that Robinson was a Class AA employee, the fact that Meadow Gold required Robinson to undertake the five new duties does not support an inference of race discrimination.

3.  Robinson was given inadequate time to learn new tasks.  Relying on the collective bargaining agreement that covered her employment, Robinson notes that employees are given 20 days to learn a new job. *Stephen Deposition*, 162:3 - 163:10

(describing collective bargaining agreement).  Robinson was given from April 6, 2006, until May 8, 2006, to learn the five new tasks.  Robinson says that during this period she was working a four day work week and she was on vacation from April 16, 2006, to May 1, 2006.  *Robinson Declaration*, ¶¶ 14, 15.  As a result, she says she had only ten working days to learn the five new tasks.  She asserts that this was contrary to the requirements of the collective bargaining agreement.  Robinson claims the collective bargaining agreement requires that employees be given 20 working days to learn a new job.

The collective bargaining agreement provides that an employee who is awarded a job after bidding on the job shall be given a trial period not to exceed 20 calendar days to demonstrate his or her fitness for the job.  *Stephen Deposition*, 162:23 -163:8.  If the employee fails to qualify during the trial period, then the employee shall revert to any open job, at the discretion of Meadow Gold.  *Id.*  This provision was not applicable to Robinson because she had not bid on a new job and was not awarded a new job.  Rather, she was asked to perform additional tasks within her existing position.  Further, Robinson was given 32 calendar days to learn the five new tasks.  In the context of the terms of the collective bargaining agreement, the time Robinson was given to learn the new tasks does not support an inference of race discrimination.  The collective bargaining agreement was not applicable to Robinson's circumstances, and Robinson was given more time to learn the five new tasks than is required by the collective bargaining agreement for employees learning a new job.

Even if Robinson had only ten working days during which she was working to learn the five new tasks, this period of time does not support an inference of discrimination.  On May 9, 2006, Robinson told Stephen and others "I already know it

all, there's nothing for me to train on." *Motion for summary judgment*, Exhibit G;

*Stephen Deposition*, 167:8-11.  Further, nothing in the record indicates that Robinson

ever stated that she could not learn the five new tasks or that she needed more time to

learn the tasks.  Rather, Robinson routinely cited reasons she would not do the tasks.

Again, one of the tasks was removed from the list of new tasks because Robinson had

not had ample opportunity to learn the task.  *Motion for summary judgment*, Exhibit G,

entry for May 15, 2006.  These circumstances do not support an inference of race

discrimination because no reasonable fact finder could conclude that Meadow Gold

gave Robinson inadequate time to learn the new tasks, or that Robinson was given less

time to learn the tasks than was given to other employees.

 4.  Lack of proper training.  Robinson argues that she never was given proper

training on the five new tasks.  She says she was particularly concerned about learning

to use a control panel because it could lead to major errors in the production process,

and that she asked for training on the use of the control panel.  *Robinson Declaration*, ¶

18.  Robinson does not specify when she asked for this training.  Robinson cites no

evidence that she needed or asked for training on any of the other four additional tasks

in question.  Again, one of the tasks was removed from the list of requirements on May

15, 2006.

 Viewing the evidence in the record in the light most favorable to Robinson, and,

thus, taking as true Robinson's contention that she asked for but was not provided

training on how to use the control panel, this fact does not support an inference of race

discrimination.  The training concerned one of the five relevant tasks.  Robinson

consistently refused to perform the four other tasks.  Again, one of the tasks later was

removed from the list of five tasks because Robinson did not have adequate opportunity

to learn that task, leaving three tasks, other than the control panel, at issue.  In view of the undisputed fact that Robinson refused to perform the other three tasks, or consistently stated various reasons she would not perform those tasks, the alleged lack of training on the control panel does not indicate that Meadow Gold took actions that support an inference of race discrimination.  Rather, excluding consideration of the control panel task, the undisputed facts in the record indicate that Robinson consistently refused to perform the three other tasks.  These facts are consistent with Meadow Gold's stated reasons for Robinson's termination, failure to perform her duties and insubordination.

5.  No justification for adding the five tasks after others had done the tasks for 12 years.  Robinson argues that Meadow Gold relied unreasonably on Robinson's most recent medical records to support the conclusion that she did not have medical restrictions.  This reliance was unreasonable, she argues, because she provided older records showing that the had been placed on permanent modified restrictions.  Again, medical records provided to Meadow Gold by Robinson indicate that her treating doctors said she "may return back to work, full duty," as of June 25, 2003, and that she was "(a)ble to return to full duty" on November 12, 2003.  *Motion for summary judgment*, Exhibit P, Bates pages 00016 - 00017.  The record on which Robinson relies is dated December 29, 2000, and states that Robinson had "permanent modified restrictions" as of May 6, 1998.  *Motion for summary judgment*, Exhibit P, Bates page 00015.  It is not unreasonable for Meadow Gold to rely on the 2003 medical records rather than the 1998 medical record simply because the 2003 records are much more current. Meadow Gold's reliance on Robinson's more recent medical records and assignment of duties based on the statements in those records does not support and inference of race

discrimination.  Notably, Robinson said she would not provide Meadow Gold with more current records demonstrating that she had an existing medical restriction.

Robinson argues also that other employees had been performing the tasks in question for 12 years, and it was unreasonable for Meadow Gold to assign these tasks to her after this period of time.  There is no basis to conclude that an employer acts unreasonably by reallocating tasks among particular employees who perform similar and related duties.  Such reassignment of duties, by itself or in the context of the other relevant facts in this case, does not support an inference of race discrimination.

6.  Failure to investigate complaint of discrimination.  On May 8, 2006, Robinson told Stephen that "Ralph just has a problem with females."  *Motion for summary judgment*, Exhibit G, entry for May 8, 2006.  Robinson was referring to Ralph Lee, the Plant Manager.  Robinson argues that Stephen's failure to begin an investigation into Robinson's complaint supports an inference of race discrimination.  The complaint stated to Stephen was a complaint about possible sex discrimination.  In her complaint in this case, Robinson alleges race discrimination.  The failure to initiate an investigation in response to an oral complaint of sex discrimination does not support an inference of race discrimination.

7.  Failure to warn Robinson of possible termination.  Robinson says she was not told that her failure to perform the five additional tasks could lead to termination.  Notably, Robinson does not dispute that she was given a written warning on April 3, 2006, which warning concerned Robinson's dispute with a co-worker about the scope of Robinson's duties.  This written warning stated that if the behavior continued "further disciplinary action will be taken, including a suspension and up to termination of employment."  *Motion for summary judgment*, Exhibit I.  It was this warning that led to

15

the re-evaluation of the particular tasks included in Robinson's job.

It is difficult to see how an employee might presume that termination is not a possibility if the employee does not do his or her job as required. Robinson seems to indulge this presumption when she argues that she should have been warned that termination was a possible consequence of her refusal to do certain tasks that her employer required her to do. Even so, Robinson was warned once, in writing, on April 3, 2006, that termination was a possible consequence. In the subsequent six weeks, Robinson was contacted repeatedly by Meadow Gold management concerning the requirement that she perform the five additional duties. During this time, Meadow Gold reasonably could assume that the message from the April 3, 2006, written warning, which addressed a related topic, still was in effect. To the extent any such warning might be seen as necessary, the April 3, 2006, written warning is adequate. In the context of the facts of this case, Meadow Gold's alleged failure to warn Robinson further cannot reasonably be seen as supporting an inference of race discrimination.

8. Use of subjective criteria. Robinson notes that Meadow Gold has a progressive discipline policy, and that insubordination is the type of infraction that may or may not lead to termination under the policy. Robinson argues that this discipline standard is subjective and permits Meadow Gold to apply any standard it chooses in enforcing the policy. Robinson argues also that because "Robinson never refused to perform the tasks but stated, with supporting medical records, that she was unable to perform the additional tasks suggests that Defendants' claim of insubordination was pretextual." *Response*, p. 17.

The evidence in the record does not support this argument. Notably, as discussed above, the relevant medical records do not support Robinson's claim that she

was unable to perform some of the tasks.  Although the range of disciplinary actions available as a response to employee insubordination may be broad, this fact alone does not support an inference of discrimination.  In the context of Robinson's undisputed refusal to perform the five new tasks, and her consistent statement of various reasons she would not or could not do the tasks, Meadow Gold's choice to terminate Robinson does not support an inference of discrimination.  Rather, it is consistent with a legitimate non-discriminatory reason for Robinson's termination.

    9.   Admission that procedures leading to termination were in place.  In her retaliation claim, Robinson claims that she complained of race and sex discrimination on May 8 and 9, 2006, and that she suffered unlawful retaliation for those complaints.  Addressing Robinson's retaliation claim, Meadow Gold states in is motion for summary judgment that "the wheels that led to Plaintiff's suspension and termination were already in motion at the time of Robinson's comment." *Motion for summary judgment*, p. 18.  Robinson argues that this statement supports an inference that the decision to suspend and terminate Robinson was made prior to giving her a full and fair opportunity to perform the five tasks, supporting an inference of race discrimination.

    The statement cited by Robinson is a statement by Meadow Gold's lawyers addressing the facts relevant to a retaliation claim, not a race discrimination claim.  In this context, this statement carries little or no weight as support for an inference of race discrimination.  Most important, the statement in Meadow Gold's brief notes correctly that Meadow Gold had taken a variety of actions related to its effort to get Robinson to perform the five additional duties before Robinson made the statements which, she claims, motivated Meadow Gold to retaliate against her.  The fact that Meadow Gold had taken these actions before Robinson made her statements on May 8 and May 9,

2006, does not support an inference of race discrimination.  As discussed in this order, Meadow Gold's actions prior to Robinson's May 8 and May 9 statements are consistent with Meadow Gold's stated reasons for Robinson's termination, and bear no indication that Meadow Gold was motivated by race discrimination when it suspended and terminated Robinson.

10.  Failure to reassign Robinson.  Finally, Robinson argues that Meadow Gold's failure to reassign Robinson to a different job supports an inference of discrimination.  As noted previously, the collective bargaining agreement provides that an employee bidding on a new job who is awarded that job shall be given a trial period not to exceed 20 calendar days to demonstrate his or her fitness for the job.  *Stephen Deposition*, 162:23 - 163:8.  If the employee fails to qualify during the trial period, then the employee shall revert to any open job, at the discretion of Meadow Gold.  *Id.*

Robinson asserts that because she was unable to perform the five additional tasks, Meadow Gold was required to place her in a new position.  As noted previously, the provision of the collective bargaining agreement on which Robinson relies was not applicable to Robinson because Robinson had not bid on a new job and was not awarded a new job.  Rather, she was asked to perform additional tasks within her existing position.  In these circumstances, the collective bargaining agreement did not require Meadow Gold to place Robinson in a different position when Robinson failed to perform the additional tasks.  The fact that Meadow Gold did not place Robinson in a different position is consistent with the terms of the collective bargaining agreement and does does not support an inference of race discrimination.

11.   Conclusion.  In sum, I have examined the evidence and argument asserted by Robinson in an effort to establish the third element of a *prima facie* case, that she

was terminated under circumstances giving rise to an inference of discrimination.  I conclude that, viewing the evidence in the record in the light most favorable to Robinson, no reasonable fact finder could conclude that any of the circumstances asserted by Robinson, individually or in combination, support an inference of race discrimination.  Robinson has not established a *prima facie* case of race discrimination in employment, and Meadow Gold is entitled to judgment as a matter of law.

### B.  Legitimate Non-Discriminatory Reasons & Pretext

Meadow Gold has asserted Robinson's failure to perform her job duties as required and insubordination as legitimate non-discriminatory reasons for her suspension and termination.  If Robinson had established a *prima facie* case, then the next step in the **McDonnell Douglas** analysis would be to determine if the plaintiff has offered sufficient evidence to show that the defendants' stated reasons for its action were pretexts for discrimination. "Pretext may be demonstrated by revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." **Morales v. McKesson Health Solutions, LLC**, 136 Fed.Appx. 115, 118 (10th Cir. 2005)(**citing Morgan v. Hill, Inc.**, 108 F.3d 1319, 1323 (10th Cir. 1997).

In this case, Robinson has not established a *prima facie* case.  Even if she had, her claim again would founder on the issue of pretext.  Again, Robinson attempts to show pretext by relying on the same evidence and argument she asserts to show circumstances giving rise to an inference of discrimination for the purpose of a *prima facie* case.  For the reasons discussed above, I conclude that no reasonable fact finder,

viewing the evidence in the light most favorable to Robinson, could conclude that any of the circumstances asserted by Robinson, individually or in combination, show pretext. None of the evidence cited by Robinson shows such implausibilities, inconsistencies, or contradictions in Meadow Gold's proffered legitimate non-discriminatory reasons that a reasonable fact finder rationally could find those reasons unworthy of belief. On this basis also, the defendants are entitled to judgment as a matter of law on Robinson's claim of race discrimination in employment.

### C.  Conclusion

Viewing the evidence in the record in the light most favorable to Robinson, no reasonable fact finder could conclude that Robinson was terminated under circumstances giving rise to an inference of discrimination.  Therefore, Robinson has failed to establish a *prima facie* case of race discrimination.  Further, even if Robinson had established a *prima facie* case, she has failed to come forward with evidence that would permit a reasonable fact finder, viewing the evidence in the light most favorable to Robinson, to conclude that Meadow Gold's stated legitimate non-discriminatory reasons for Robinson's termination were pretexts for race discrimination.  Therefore, the defendants are entitled to judgment as a matter of law on Robinson's race discrimination claim, her first claim for relief.

### V.  RETALIATION

In her second claim for relief, Robinson asserts a claim for retaliation.  She says she complained to Stephen, on March 29, 2006, that a co-employee, Sherman Grays, was harassing her.  Robinson reported that she thought Grays was trying to take Robinson's job.  *Stephen Deposition*, 90:1-6.  Robinson did not associate this complaint with race or sex discrimination.  *Id.*  Robinson says she complained to Lee, on May 8,

2009, that Robinson believed that Lee's insistence that Robinson learn the five new tasks was because "he had a problem with Black women." *Robinson Declaration*, ¶ 17. On May 8, 2006, Robinson complained to Stephen that "Ralph [Lee] just has a problem with females." *Motion for summary judgment*, Exhibit G, entry for May 8, 2006. Robinson asserts that the decision to require her to do the five additional tasks, which was taken on April 6, 2006, was in retaliation for her March 29, 2006, complaint about Sherman Grays. She argues also that her suspension and termination were in retaliation for the three complaints outlined above.

## A.  *Prima Facie* Case

To establish a *prima facie* case of retaliation, Robinson must show that (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the employer's alleged retaliatory action to be materially adverse, meaning that the employer's action might dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection exists between the protected activity and the materially adverse action. ***E.E.O.C. v. PVNF, L.L.C.***, 487 F.3d 790, 803 (10th Cir. 2007) (applying Title VII). If the plaintiff establishes a *prima facie* case of retaliation, and there is no direct evidence of retaliation, then the burden-shifting analysis of ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 802-04 (1973), is applicable. ***Id***. at 804. Thus, if a plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If defendant meets this burden, then the plaintiff must prove the ultimate fact of retaliation by showing that defendant's proffered reason is pretextual.

Robinson's March 29, 2006, complaint to Stephen about Grays was a complaint

that Grays was harassing Robinson in an effort to take Robinson's job.  This complaint does not implicate race, sex, or other unlawful discrimination and, thus, is not protected opposition to discrimination.  ***See, e.g.,* Hinds v. Sprint/United Management Co.**, 523 F.3d 1187, 1202 (10th Cir. 2008) (complaints that do not implicate unlawful discrimination are not protected opposition for purposes of retaliation claim).  Robinson's March 29, 2006, complaint about Grays cannot be the basis for a retaliation claim.

For the sake of this analysis, I assume that Robinson's complaints that Lee had a problem with women or with Black females were protected opposition to discrimination.  These complaints arguably implicate race and sex discrimination.  Certainly, a reasonable employee would find suspension and termination, the actions allegedly taken in retaliation for these complaints about Lee, to be materially adverse.  For the purpose of a *prima facie* case of retaliation, this leaves only the issue of causation.

"A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  ***Haynes v. Level 3 Communications, LLC***, 456 F.3d 1215, 1228 (10th Cir. 2006) (***quoting O'Neal v. Ferguson Constr. Co.***, 237 F.3d 1248, 1253 (10th Cir.2001) (internal quotation omitted)).  Standing alone, temporal proximity between the protected activity and the retaliatory conduct must be very close in time to establish causation without further evidence.  *Id.*  Robinson complained about Lee on May 8 and 9, 2006, she was suspended on May 9, 2006, and her employment was terminated on May 15, 2006.  This temporal proximity is very close and is sufficient to establish causation for the purpose of a *prima facie* case.

### B.  Legitimate Non-Retaliatory Reasons & Pretext

As discussed above, Meadow Gold has substantiated legitimate non-retaliatory reasons for Robinson's suspension and termination.  To show that these reasons were a pretext for retaliation, Robinson relies on the same pretext evidence discussed above in relation to her race discrimination claim.  Again, none of the evidence cited by Robinson shows such implausibilities, inconsistencies, or contradictions in Meadow Gold's proffered legitimate non-retaliatory reasons for Robinson's termination that a reasonable fact finder rationally could find those reasons unworthy of belief. Absent some evidence that could support a reasonable conclusion that Meadow Gold's stated reasons for its actions are a pretext for retaliation, the defendants are entitled to judgment as a matter of law on Robinson's retaliation claim.

### VI.  CONCLUSION AND ORDERS

Viewing the evidence in the record in the light most favorable to the plaintiff, I conclude that no reasonable fact finder could find in favor of the plaintiff on either her claim of race discrimination or her claim of retaliation, as stated in her first and second claims for relief in her Second Amended Complaint [#86], filed May 29, 2009.  In an order issued concurrently with this order, I grant the defendants' motion to dismiss the plaintiffs' third and fourth claims for relief.  The present order and my order on the defendants' motion to dismiss resolve all of the plaintiff's claims in this case.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendants' Motion for Summary Judgment** [#80] filed April 30, 2009, is **GRANTED**;

2.  That the plaintiff's first claim for relief, alleging race discrimination under 42 U.S.C. § 1981, is **DISMISSED** with prejudice;

3.  That the plaintiff's second claim for relief, alleging retaliation under 42 U.S.C. § 1981, is **DISMISSED** with prejudice;

4.  That the plaintiff's **Motion to Dismiss Defendant's Counterclaim** [#67] is **DENIED** as moot, in light of the defendants' notice of dismissal [#90];

5.  That **JUDGMENT SHALL ENTER** in favor of the defendants, Dean Foods Company, A Delaware Corporation, Dean West, LLC, A Delaware Limited Liability Corporation, Southern Foods Group, LLC, A Delaware Limited Liability Company Doing Business as Meadow Gold Dairy, against the plaintiff, Mary Robinson, on the plaintiff's first and second claims for relief, as stated in her Second Amended Complaint [#86] filed May 29, 2009;

6.  That the defendants are **AWARDED** their costs to be taxed by the Clerk of the Court pursuant to FED. R. CIV. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

7.  That the trial preparation conference set for Friday, July 31, 2009, at 9:00 a.m., is **VACATED**;

8.  That the trial set to begin on Monday, August 24, 2009, at 8:30 a.m., is **VACATED**; and

9.  That this case is **CLOSED**.

Dated July 30, 2009, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge